DANIEL GOGGANS, ADMINISTRATOR, *vs.* J. O. TURNIPSEED AND ANOTHER, EX'ORS.

So much of the Act passed December 21, 1861, and other later Acts, known as the Stay Law, as provided that "debts due on open accounts and other demands not heretofore bearing interest by law, shall bear interest," &c., is unconstitutional and void, so far as it related to debts contracted before the passage of the first Act.

Moses, C. J., *holding* that an Act allowing interest upon existing contracts not bearing interest, is interdicted by Section 10 of Article I of the Constitution of the United States, declaring that "no State shall pass any law impairing the obligation of contracts."

Willard, A. J., *holding* the provision in relation to interest not to be an independent enactment, but to be merely a feature of the general plan of the Act to grant a suspension of legal remedies—to be inseparable from that general plan—and, therefore, to be affected by, and void under, the decision in *State* vs. *Carew*, 13 Rich., 498.

BEFORE DAWKINS, J., AT NEWBERRY, SPRING TERM, 1867.

*Sum. pro.* on a merchant's open book account for goods sold in the year 1861, previous to the 21st December. His Honor gave a decree for the plaintiff for $33.67, the amount of the account, and for interest thereon.

The defendants appealed, on the ground that the Act of December 21, 1861, under which the interest was allowed, was unconstitutional and void, so far as it affected contracts then existing.

*Fair,* for appellants.

*Baxter,* contra.

Opinion of

MOSES, C. J. This is a process on (what in the report is called) "a merchant's account for the year 1861." We understand, by the admission of the counsel, that it was an open running account with a storekeeper for goods supplied during the year 1861.

In this State it has always been held that interest was not recoverable on an open or book account.— *Skirving* vs. *Ex'rs of Stobo,* 2 Bay., 233 ; *Adm'rs of Conyers* vs. *Magrath,* 4 McC., 392; *Johnson* ads. *Bennett,* 1 Speers, 209. And Judge Nott, delivering the opinion of the Court in *Goddard* vs. *Bulow,* 1 N. & McC., 57, remarks: "I should be willing to carry the doctrine further, and allow interest in all cases on open accounts where payment is to be made at a certain time. But I think the contrary has been so well established by the uniform current of decisions in this State that it would now be a dangerous and unauthorized innovation."

So far have our Courts gone on this question that, in *Bishop* vs. *Ross,* Rice, 21, it was held that interest could not be recovered on a letter of guaranty given for an open account, although the sum be fixed in writing.

The General Assembly, in the exercise of its legislative powers, may prescribe interest on demands of any character, if, in doing so, it does not violate any of the provisions of the Federal or State Constitution.

It is objected that the Act under which interest was here decreed does violate the 10th Section of 1st Article of the Constitution of the United States, which forbids the passage by the State " of any law impairing the obligation of contracts."

Goggans *vs.* Turnipseed.

On the 21st of December, 1861, the General Assembly passed an Act, entitled "An Act to extend relief to debtors, and to prevent the sacrifice of property at public sales."—13 Stat., 18.

The first Section makes unlawful the service of *mesne* or final process of any of the Courts of this State for the collection of money until after the expiration of the first session of the next General Assembly of the State, except in the cases therein specifically provided. It was renewed in February and December, 1864, and continued in force, in December, 1865, until the adjournment of the next regular session.

The 6th Section is in the words following: "That, while this Act remains in force, debts due on open accounts, and other demands not heretofore bearing interest by law, shall bear interest at the rate of 7 per cent."

It is under this that the claim to interest is made. The cause of action, therefore, arose before the passage of the Act, and the only question is, whether the right to interest, which the Section provides, can attach to it?

It is an admitted principle, that one clause or part of an Act may be without any constitutional prohibition, and yet another not subject to such exception.—*Ogden* vs. *Saunders*, 12 Wheat., 213 ; *Barry* vs. *Iseman*, 14 Rich., 129. Under this very statute, the Court of Appeals held, in the *State* vs. *Carew*, 13 Rich., 498, the first Section unconstitutional as to antecedent contracts, and, in *Barry* vs. *Iseman*, valid as to contracts entered into after its passage; and, in *Wardlaw and Simkins, administrator and administratrix of Simkins* vs. *Buzzard*, 15 Rich., 158, that the 5th Section, which suspended the operation of the statute of limitations "during the period in which the Act was of force," "so far as applicable to causes of action coming within the meaning of the Act, was not in violation of the Constitution of the United States."

The obligation which the Constitution refers to is the legal, and not the moral attribute of the contract. "It is the law which binds the party to perform his undertaking." It subsists in the law applicable to the agreement. "Anything which enlarges, abridges, or, in any manner, changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it."—*Ogden* vs. *Saunders*, 12 Wheat., 213. This principle is recognized in all the cases where this constitutional inhibition has been discussed; among which are: *Sturges* vs. *Crowninshield*, 4 Wheat., 197 ; *Green* vs. *Biddle*, 8 Wheat., 1; *Bronson* vs. *Kenzie*, 1 Howard,

311; *Planters' Bank* vs. *Sharp,* 6 Howard, 301; *Curran* vs. *State of Arkansas,* 15 Howard, 319.

The obligation of the contract, therefore, is the tie which fastens the parties to the observance of it. They have assumed some act, of sufficient consideration, in reference to existing laws, which, in fact, import themselves into the contract. It is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribe.

It is not in the power of either, independent of the consent of the other, to increase or abridge any of the responsibilities which attached to the contract at its inception. Nor has the State, in the face of the Constitution, any more power to enlarge or diminish them.

In the case before us, the plaintiff's intestate contracted, by parol, with the defendant's testator, for the purchase of goods, wares and merchandise, from time to time, during the year 1861, at certain fixed prices. Contracts of that character did not then bear interest by law. When the General Assembly (on December 20, 1861,) required by the Act "that, while it remains of force, debts due on open accounts, and other demands not heretofore bearing interest by law, shall bear interest at the rate of 7 per centum per annum," did it not enlarge the terms of the agreement between the parties, to the benefit of the one and the prejudice of the other? If it had the right to declare that interest should run upon such contracts, when, at the time they were entered into, it was not a legal consequence, might it not, with equal propriety, prescribe that a penalty should attach on, or damages follow, the delay of payment?

The extent of the proposed change in the law does not affect the principle. The imposition of any condition, "however apparently immaterial its effect on the contract, or any part of it," or any deviation from its terms, in addition to, or diminution of, those which, by law existed, when it was made, impairs the obligation.

In this view, we hold the sixth Section of the Act void, because in violation of the said Article of the Constitution.

The motion for a new trial is granted, unless, by the 1st day of June next, a *remittitur* is entered by the plaintiff for the amount of the interest included in the decree.

April 27, 1869.  Opinion of

WILLARD, A. J.  I concur in the result arrived at by the Chief Justice, but do not find it necessary to consider the validity of the sixth Section of the Act under examination, as a distinct and independent enactment.  It can only be considered as part and parcel of the measure of relief set forth in both the title and body of the Act.

As the Act sought to confer on the debtor a great favor, at the cost of the creditor, it naturally occurred to the Legislature to afford the creditor that which should approach the nearest to an equivalent for the temporary loss of a remedy to enforce his claim.

The allowance of interest upon demands which, independently of the statute, did not carry interest, was an obvious expedient to attain this end.  This Section was, in terms, to continue in operation only during the life of a temporary Act ; or, in other words, during the temporary suspension of remedies contemplated by it.

This circumstance shows that, as a measure of legislation, it was accessory merely to the more general object of the Act, and rested upon the same foundation of policy that dictated the suspension of legal remedies.  It would be doing injustice to the intention of the Legislature to hold that this Section was intended to change the law of interest, without regard to the other objects sought to be secured by the Act.

It possessed neither permanence nor definiteness sufficient to warrant such an assumption.

Regarding this Section, then, as a feature merely of the intended plan of suspending legal remedies, and it is affected by the decision of the Court of Errors in *State* vs. *Carew*, 13 Rich., 498, and is inoperative under that decision, as affecting antecedent contracts.

I do not feel called upon to express any opinion as to the validity of acts of legislation, fixing interest on demands, as affecting antecedent contracts.